Nelson, J.,
delivered the opinion of the Court.
Thomas M. Vincent departed this life intestate, on or about the 21st of May, 1866, leaving the complainant, Sarah M., his widow, and five children, his heirs at law. Two of the children were born during a former marriage, and the names of the other three are joined with that of their mother, who now acts as their next friend, as complainants. Geo. W. Vincent was appointed administrator of the estate, at the July Term, 1866, of the County Court of Sullivan County. It is alleged in the pleadings, that, at the same term of the County Court, on applictaion of the widow, commissioners were appointed to allot to her a year’s support for herself and family, and also to lay off the widow’s dower. Reports were signed by the different commissioners, bearing date 25th July, 1866, and it is alleged in the answer of the administrator, that said reports were returned to, and confirmed by, the County Court, but there is no evidence in the record, as to the correctness of this allegation. The widow being dissatisfied with the proceedings in the County Court, filed this bill on the 10th of October, 1866, for the purpose of obtaining an assignment of dower, and allowance for her year’s support, and a decree against the administrator, for the value of certain articles exempt by law from execution, which were sold by him. It is now *335 objected tbat tbe County Court acquired exclusive jurisdiction over the various subjects mentioned in the bill, and that the Chancery Court has no jurisdiction of the questions, as to the articles exempt from execution, and the widow’s allowance; and is precluded from exercising its concurrent jurisdiction, as to the assignment of the dower, by reason of the application to the County Court. It is a sufficient answer to this objection, thát the jurisdiction of the Chancery Court was not resisted by plea in abatement, demurrer, or motion to dismiss, as expressly required in the Code, 4309, 4318, 4321, 4385. Under section 4321 the filing of an answer is a waiver of objections to the jurisdiction of the Court, and the cause can not be dismissed, but must be heard and determined upon its merits.
Under the direction of the Chancellor, two reports were made by the Master, to which exceptions were filed, but it is only necessary to notice so much of the proceedings in the Court below as we think is erroneous.
The intestate died seized and possessed of a tract of land containing three hundred and seventy acres, of which eighty-six and a half acres, by metes and bounds, 'were set apart, in the report of the Commissioners, as dower; and this report addressed to the County Court, was made the basis of the Master’s report, and the Chancellor’s decree. It is stated in the Master’s report that the evidence of four of the witnesses tends to show that the dower, as laid off by the Commissioners, is less in value than one-third part of the tract of land, exclusive of the improvements, while the evidence of six other witnessed tends to establish the contrary. A careful examination *336 of the record has satisfied us that the evidence of the four witnesses does not merely tend to show that the assignment of dower was made upon an erroneous principle, but conclusively demonstrates the fact. They state as positively as witnesses could with propriety make such a statement, that the eighty-two and a half acres exclusive of the impi’ovements, are not equal in value to one-third of the tract of land; and nearly all the witnesses agree in the statement, that while the entire tract contains more than enough woodland to support it, the quantity of timber land included in the eighty-six and a half acres is not more than sufficient to re-build the fences; that it is inconveniently located on a cliff, difficult of' access; that there is timber in sufficient quantity growing nearer the mansion house, which would be more convenient to the widow, and the assignment of which would not be seriously detrimental to the estate in remainder. One of the three Commissioners who was examined as a witness for defendants, states that they supposed that the widow would be appointed guardian for her three children, and thought she could get enough timber off that part allotted to the children to supply the south end of the dowry. Another of the Commissioners states in substance, that he thinks the attempted assignment of dower was substantially correct. But, from his official character, wC attach the most importance to the statement of the County Surveyor, who was. one of the Commissioners, and was also examined as a witness, touching the reasons by which he was influenced in making his report, and which we think it probable, from all the circumstances, exerted, also, a control *337 ling influence over the action of the other two Commissioners. In his deposition, he- states that, “as one of the Commissioners, I placed an estimate of six or eight hundred dollars upon the mansion house, and then valued the land, and deducted the value of the house from the land.” This statement of the witness, and other evidence in the record, and the action of the Chancellor, raises the question as to what construction shall be placed upon the provisions of the Code which relate to the mansion house, and other buildings and improvements.
It is provided in the Code, 2398,. that if any person die intestate, leaving a widow, she shall be entitled to dower in one-third part of all the lands of which her husband died seized and possessed, or of which he was equitable owner. By sections 2401 and 2402, it is declared that, in said third part shall be comprehended the dwelling house in which the husband was accustomed most generally to dwell next before his death, commonly called the mansion house, unless the widow agree that it shall not be included, together with the offices, outhouses, buildings and other improvements thereunto belonging or - appertaining; but if it appear to the Court assigning the dower, that the whole of said dwelling house, out-houses, offices and appurtenances, cannot be applied to her use, without manifest injustice to the .children, or other relations, then such part or portion thereof as the Court shall conceive will be sufficient to afford her a decent residence, due regard being had to her condition and past manner of life, shall be assigned to her. Section 2403 provides that where there are more tracts than one, the Commissioners shall not be compelled to assign her a third part of each separate tract, but may make *338 the assignment, according to quality and quantity, in such manner as will give her one-third in value of the whole estate.
The section" last cited contains no sjDecial provision as to the mansion house and other improvements, but relates only to the mode of assignment where there are more tracts than one. The two previous sections have especial reference to the mansion house and other improvements ; and if those sections are susceptible of two interpretations, we hold that, according to the uniform course of decisions in England, and in this State, it is our duty to select the pne which is most favorable to the widow. In Parks’ Treatise on the law of dower, it is said “that from the earliest periods of the existence of the common law in England, a very extraordinary degree of favor was bestowed in the administration of justice on this provision for the support of a wife surviving her husband. The vigilance of the Courts in watching over her interests, is very amply displayed in the Year Books and other early reports. Dower was, indeed, proverbially the foster child of the law; and so highly was it valued in the cat-alogue of social rights, as to be placed in the same scale of importance with liberty and life. 9 Law Lib., 2 m. Although the right is not so extensive in this State as in England, the Courts have always given a broad and liberal construction to the law giving dower, as was declared in Harrell v. Harrell, 4 Cold., 379, 380, and Tarpley v. Gannaway, 2 Cold., 248.
The primary intention of the Legislature, in section 2398 of the Code, was to give to the widow one-third part of all the lands; and in section 2401, that this part *339 should include the mansion-house and other buildings and improvements specified, without any reference whatever to the value of the buildings and other improvements. But, as in cities and towns, the buildings and other improvements often constitute the bulk of the estate, and by assigning the whole to the widow, as dower, injustice might be done to the children or other relatives, section 2402 provides against such manifest injustice by declaring that such part or portion only shall be assigned as will be sufficient to afford her a decent residence. This might well be done in a.large town or city, where buildings are frequently so constructed as that different families may reside under the same roof without inconvenience. B.ut,. as we .apprehend, the instances are rare in this State, where houses are erected upon farms, or in the country, with reference to their occupation by more than one family, we hold ■ that, as a general rule, the value of such improvements is not to be taken into the' estimate in assigning the widow’s dower. The statute does not contemplate a valuation of the improvements, and that such of them as are allotted to the widow shall be set off against an equal value in land. The direction is explicit, that such part or portion only of the dwelling-house, out-houses, &c., as can be applied to her use, without manifest injustice to the children, shall be alloted to her. The leading object of the statute is to give her the mansion-house and buildings, or such part thereof as will afford her a decent residence, due regard being had to her condition and past manner of life. It was not the intention to compel the widow to take all the buildings and improvements, and to lose any part of *340 that share of the land which was intended to be assigned for her support. Her past manner of life is to be determined by the manner in which the intestate was living at or about the time of his death; and if he was then occupying a comfortable residence, it is to be presumed, as a general rule, that the intention of the Legislature was, that she should continue to reside there, without paying rent to the heirs, in the form of an equivalent in land. There may be exceptional cases, but there is no evideuce in the record to show that this case should constitute an exception to the general rule. The value of the entire tract of land is not shown in the testimony, but there is evidence that the improvements were worth about twenty-five hundred dollars.
It is in proof that the testator was “one of the best livers in the country,” and that his estate is not embarrassed with debt. He was the father of -the three children by the complainant; and there is no evidence to show that she refused to allow the two children by a former wife to reside with her. We do not hold that she was under any legal obligation to permit them to remain; but, upon the facts of this case, we declai’e that the assignment to the widow of less than one-fourth of the tract of land does not meet the requirements of the statute, and that this case shall be remanded to the Chancery Court to the end that Commissioners shall be again appointed and dower allotted to the widow, so as to include the mansion-house, out-houses, buildings and other improvements, without charging her with their value or any part thereof, and so as to include within the dower assigned a ratable and convenient part of the *341 timber land sufficient to support the tract which may be assigned as a dower.
Exception was taken to the Master’s report, allowing only six hundred dollars for the year’s support of the widow and her family, but the exception was overruled by the Chancellor; and it was directed in his decree, that four hundred dollars of this amount should be paid over to the complainant, who is guardian to Mary, Charles and "William "Vincent, and two hundred dollars to John Hunt, who is guardian of Kate and Laura Vincent. It does not appear from the record, that Kate and Laura were living with John Hunt at the time of their father’s death. One of the defendant’s witnesses, who was one of the Commissioners appointed to ascertain the year’s allowance, and set apart the property exempt from execution, states that there was a question at the time, whether the children would stay with the widow or not. The widow said she wanted them to stay with her, and there was an agreement that if the children, two little girls, by his first wife, left, they should have one of the cows, and it was to go with them for their benefit. From this evidence it may be fairly inferred, that the children were living with the complainant at the time of the death of their father, and that they were taken away against his widow’s consent and .under these circumstances, we hold that the Chancellor erred in directing that any part of the allowance should be paid to the guardian. Under the Code, 2287, the moneys and effects set apart for the support of the widow and her family, until the expiration of one year after the decease of the husband, are declared to be the abso *342 lute property of the -widow, for said uses, and shall not be taken into the accounts of the administration of the estate of said intestate, nor seized upon any precept or execution; the right or title to the money and effects passes at once to the widow, according to Bayless v. Bayless, 4 Cold., 363. At the death of her- husband, the two children were part of complainant’s family, and as the title to the money and effects was vested in her, it was error to direct that any part of it should be diverted into the hands of the guardian. The policy of the statute is to keep the family together, at least for a year after the death of the intestate, and to make the widow the head of the family. To allow any part of the fund to be taken from her, and placed in other hands, has a tendency to interrupt the harmonious relations that should exist between members of the same household, and to subvert the lawful authority of the widow, either as a parent, or standing in loco parentis. The effect of such an order is to annul the express provision of the statute, and to declare that the moneys and effects are not the absolute property of the widow.
Of the witnesses examined as to what should be the amount of the pecuniary allowances to the widow for the year’s support of herself and family, one fixes the amount at $800, another at $700 or $800, another at $750> another at $600, another at $442.58, and another at $400; and in view of the facts of this case, we are of opinion that complainant’s exception to the Master’s report should have been sustained, and the allowance fixed at seven hundred dollars for the widow and children. "We hold that the amount of the allowance should be regulated by *343 the state of' facts existing at the time of the intestate’s death, and not by any changes in the family within a year afterward.
The Chancellor’s decree is also erroneous in not charging the administrator with those articles exempt from execution, which were taken from the widow’s possession, and sold by him. It seems that the widow was properly allowed to retain all the articles on hand at the time of intestate’s death, which were exempt from execution under the specific provisions of the Code; but the decree of the Chancellor declares that the articles exempt from execution by the Acts of 1859-60 do not vest in the widow under that Act, and that they were properly sold. There are two exemption laws contained in the Acts of 1859-60. By chapter 31, it is declared that there shall be exempt to each head of a family twenty bushels of wheat, under the same rules and regulations as provided for in section 2107, of the Code of Tennessee, and by chapter 66, sections 2 and 3, a sewing machine, an additional cow and calf, fifty pounds of picked cotton, twenty-five pounds of wool, a sufficient quantity of upper and sole leather to provide winter shoes for the family, and an additional horse or mirle, are exempt from execution. We hold that the Code, 2288, which provides that the property exempt by law from execution shall, on the death of the husband, be exempt from execution in the hands of, and be vested in, the widow, without regard to the size or solvency of the estate of the deceased, &c., is not limited to the articles specifically enumerated in the Code, 2107 to 2113, inclusive; that the statute is not temporary, but *344 perpetual, in its nature, and that the language is such as to embrace all property which has been exempted from execution at any time subsequent to its passage. The administrator will, therefore, be required to account for all articles disposed of by him, which were exempt from execution at the time of the intestate’s death.
The Chancellor’s decree will be affirmed, so far as it ' accords with this opinion, and reversed in other respects, and the case will be remanded. The costs in the court below, and in this court, will be divided into three equal parts — one of which shall be paid by complainants, another by the administrator, and the third by the guardian.